## WALLACE v. TOWN OF NEW ALBION.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

BRIDGES—ACTION FOR INJURIES—LIABILITY.

> A town is not liable for injuries caused by a horse taking fright at a hole in a bridge belonging to the town, and backing the vehicle in which plaintiff was riding off the bridge, where the hole at which the horse became frightened does not necessarily interfere with the passage of vehicles.

Appeal from Trial Term, Cattaraugus County.

Action by Martha S. Wallace against the town of New Albion. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

J. H. Warring and J. M. Wilson, for appellant.
M. B. Jewell and D. E. Powell, for respondent.

STOVER, J.  The action is one for negligence in failing to keep a bridge, including its approaches, in proper repair.  The plaintiff lived on a farm, and on the afternoon of the day of the accident drove to a neighboring village, and on her return crossed a bridge in the town of New Albion, spanning what is known as "Mud Creek."  The bridge is near a small village, and is an iron structure, 18 feet long, 16 feet wide, and erected 16 feet above the water. The bridge is upon a grade.  At the time of the accident the plaintiff was driving, and had her boy and a neighbor's girl in the vehicle.  She went upon the bridge, and as they passed along the horse shied at a hole, and then commenced to back, and backed off from the bridge, and over the side of the approach.  The hole in the bridge was about 14 by 18 inches, and was on the southerly side, about 20 feet from the end of the bridge.  This hole was caused by two of the planks slipping from their place towards the northerly side of the bridge, thus leaving a hole at the southerly side of the bridge of about the dimensions above stated.

The court, in charging the jury, used the following language:

"To repeat, the claim and contention on the part of this plaintiff is that the horse, in the first instance, became frightened at this hole in the bridge; that in consequence of that fright he backed from the bridge; and that, in consequence or by reason of the fact that the timber had been removed, that the buggy went over the embankment; whereas, as the plaintiff says and argues, if that timber had been left in its place, the accident would not have happened.  That is the claim, and it is within very narrow lines."

Subsequently the defendant asked the court to charge—

"That the hole in the edge of the sixteen-foot roadway, caused by the slipping of the planks, was not such a defect in the roadway as, according to common experience, would reasonably be expected to cause fright to a horse of ordinary gentleness traveling over the bridge, and that the plaintiff cannot recover if the horse took fright at such hole."

In response the court stated:

"That is the very gist of the claim—that the fright was taken at the hole. That is where it originated.  I refuse to charge in that language."

Again the court was requested to charge "that the hole in the bridge was not such a defect as was obviously calculated to frighten horses."  This was also refused, and an exception duly taken.

There were several other requests, and among them the following:

"That if two independent causes of fright concurred, which may have frightened the horse (that is, the hole in the floor, and the rattling of the loose planking upon the floor of the bridge), for one of which causes the defendant would not be liable, then it is incumbent upon the plaintiff to show affirmatively that the horse did not take the fright from the cause for which the defendant is not liable.

"By the Court:  Entirely so.  For instance, if the hole in the bridge, which the plaintiff says the horse looked at before it began to back—  If that was not the sole cause of the fright of the horse in the first instance, she cannot recover."

This seems to have been settled as the law of the case for, upon a further request that:  "If it may have been the rattling of the plank, then she cannot recover.  The plaintiff must affirmatively

show that it was not that cause"—the court stated: "I agree with you perfectly. The plaintiff must show the horse took fright in the first instance at the hole in the bridge."

There was another request to charge, namely:

"That if it is found that the loose planking on the bridge were replaced and put back in their places on the Sunday before the accident, and if it is also found that after such repair, and before the accident, the defendant's commissioner of highways had no actual notice of the existence of the hole at the time of the accident, the plaintiff cannot recover."

The court refused to charge in the language requested, but did charge generally that the commissioner was bound to exercise reasonable diligence to keep the bridge in order, and, if he failed to do so, that the town was liable.

The accident occurred on Friday, and there was evidence tending to show that the planking in the bridge had been replaced on the Sunday before.

We think the defendant was entitled to the instruction with reference to the hole in the bridge, namely, that it was, as matter of law, not such a defect as would render the town liable. Common experience is that planks of a bridge will at times become loose, and the evidence shows that the carriageway on this bridge was 16 feet wide, and of sufficient width to permit teams to pass upon the planking of the bridge. There was ample room for people passing as the plaintiff was, with a single conveyance, and we think the theory that the jury might find that that was such a defect that it would obviously tend to frighten horses is not correct. A town is not bound to look out and prevent all possible danger of fright to all sorts of horses that may happen to be on its highways and bridges. If so, it may be said that a particularly sensitive animal might be frightened at the sight of the water over the edges of the bridge, and that, in order to protect travelers on the highways who saw fit to use such animals, the bridge should be so inclosed and barricaded that the surface of the stream could not be seen. Presumably, people driving upon a bridge of this character would see any defect such as here existed—the slipping of a plank a foot or more from its bearings, and there being 14 or 15 feet left, within which they could guide their horses and travel with safety. We do not understand that a jury can speculate upon so obvious a condition, and say that but for the hole in the bridge the horse would not have been frightened, and the accident would not have happened. This seems quite at variance with common experience—not a condition where common experience would tend to show any danger to be apprehended, but a condition which so often exists, and from which danger has not been experienced, that it may be said, as matter of law, that the condition was such as, according to common experience, would not be reasonably expected to cause fright to a horse of ordinary gentleness traveling over the bridge. It seems to us that under the charge the jury were left practically to determine that the plaintiff was entitled to recover upon proof of the existence of the hole, if the jury determined that the defendant had failed to exercise ordinary care in maintaining the

bridge.   It may be that the plaintiff may recover upon some other
theory in the case, but it seems to us that under the instruction of
the court, and the refusal to instruct the jury as to the liability of
the defendant with reference to the hole, the jury may have been
misled, and must have found that the primary cause of the accident
was the frightening of the horse by the hole in the bridge, and we
deem that a verdict based upon such instruction and ruling cannot
be upheld.   We think the defendant was entitled to the instruction
asked for with reference to the obvious character of the hole in
the bridge, and that the refusal to so charge was reversible error.
    The judgment should be reversed, and a new trial granted, with
costs to appellant to abide the event.   All concur.